Entenman Timber Co. v. Commissioner.
Entenman Timber Co. v. Commissioner
Docket No. 2192.
United States Tax Court
1945 Tax Ct. Memo LEXIS 353; 4 T.C.M. (CCH) 25; T.C.M. (RIA) 45009; January 10, 1945
*353 Braxton C. Wallace, C.P.A., Textile Bldg., Greenwood, S.C., for the petitioner. Bernard D. Hathcock, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent has determined deficiencies in the petitioner's income and excess profits taxes for 1940 of $1,115.65 and $935.06, respectively. The only issue presented is the deductibility by petitioner of $7,000 paid by it in 1940 to its two stockholders as reimbursements to them of traveling and other expenses incurred by them in its behalf during the years 1925 through 1940. Findings of Fact The petitioner was a South Carolina corporation, organized in 1925, and dissolved near the end of 1940. It filed its 1940 income tax return with the Collector at Columbia. C. P. Gable, of 126 North Main Street, Sumter, South Carolina, and Albert Entenman, of 115 Ocean Avenue, Brooklyn, New York, were the directors at the time of dissolution. Throughout its existence the stockholders of petitioner consisted of Gable; who owned 14 percent of its stock, and Entenman, who owned 86 percent. Gable, who was secretary and treasurer of the petitioner, resided in South Carolina, and Entenman, *354 who was president, resided in Brooklyn, New York. The petitioner was organized to purchase certain timber lands situated in the Lynches River area of Florence County, South Carolina, with a view to the possible operation of a lumber plant on the lands. From the time of organization until about 1932, the petitioner acquired a total of more than 30 tracts of timber. All of the tracts acquired were situated in Florence County, except one, which was in Williamsburg County, some distance away. Because of the existing depression, the idea of operating a lumber plant on the properties was abandoned, and beginning about 1933 and continuing until 1940, attempts were made to sell the properties. The timber lands originally purchased by petitioner absorbed all the money paid in for capital stock. As additional lands were purchased Entenman and Gable provided their respective pro rata shares of the funds and received therefor additional shares of stock in the petitioner. In 1933 they decided to reduce the outstanding capital stock of the petitioner, and this was effected by petitioner giving them notes for the amount of the stock reduction. The petitioner's outstanding capital stock at the *355 time of dissolution was $5,000. Because the purchases of timber absorbed its funds, the petitioner did not have funds to pay its ordinary and necessary expenses. As a consequence, Gable and Entenman individually provided the funds used in conducting its affairs. In some instances, such as in the case of real property taxes, the money was furnished directly to petitioner and disbursed by it. In these instances the transactions were recorded on petitioner's books. In other instances the money was paid out of pocket by Gable and Entenman, and no record was ever made on petitioner's books with respect to such amounts. In November 1940, the petitioner succeeded in selling its timber lands. Gable and Entenman had a conference preparatory to winding up its affairs and dissolving it. Present at the conference was M. E. Reid, who had kept petitioner's books from 1926 through 1929, and from 1933 to the time of the conference, and who had been associated with Gable throughout the time he had kept the books of the petitioner. Reid was aware of the fact that from the beginning of petitioner's existence Gable and Entenman had made out-of-pocket expenditures in behalf of petitioner, for which *356 they had never been reimbursed, and of which petitioner had no record. He raised the question as to what was to be done about petitioner's reimbursing them for such expenditures. After considerable discussion and estimation of their expenditures, Gable and Entenman agreed on $3,500 each. On November 27, 1940, the amounts of $3,500 were paid by petitioner to Gable and Entenman. No portion of the amount received by Gable was reported by him in his 1940 income tax return. In reporting its income for 1940, consisting entirely of the gain realized on the sale of its timber lands in that year, the petitioner deducted $7,000 as payments made to Gable and Entenman for travel and other expenses from 1925 through 1940. In determining the deficiencies in controversy, the respondent disallowed the deduction. Gable lived at Gable, South Carolina, from about 1924 to 1928 or 1929, and then for a year or so lived in Charleston. Since about 1933 he has resided in Sumter. Charleston is about 100 miles distant from the timber lands which the petitioner owned, while Gable and Sumter are each about 40 or 50 miles from them. During the period 1926 through 1929, Gable averaged making about 25 trips per *357 year to the timber lands, and during the period 1933 through 1940, he averaged 12 or more trips per year. Occasionally on these trips he stayed overnight in Florence or Kingstree. While all the trips were not equally as expensive, his cash outlay per trip averaged from $5 to 10, exclusive of gasoline used in his automobile. These trips were made for the purpose of looking after the property, such as making surveys of the property, checking reports on timber being stolen, cleaning up after fires that had damaged the timber, examining the properties in connection with property tax assessments, paying the watchman or caretaker who was employed to look after the property, etc. Some trips were made for the purpose of showing the timber lands to prospective purchasers. The petitioner had some litigation in connection with one of the tracks that it owned and in connection with that litigation Gable incurred certain traveling expenses. About 1933 or 1934, it was found that the county tax authorities had become confused as to the properties owned by the petitioner and in making proper assessments. This necessitated various trips by Gable and the bookkeeper to the tax office in Florence and *358 to the office of the petitioner's attorney in Marion. Considerable time was spent in establishing the identities of the various properties owned by petitioner and in having proper assessments made thereon. In connection with these matters, Gable went to Marion about once a month, for three or four years. On one occasion Gable supplied $15 to $18 worth of groceries for the use of surveyors who were employed by petitioner on its timber lands. The watchman or caretaker who looked after petitioner's property was an elderly man, of small financial means, but whose services were valuable to petitioner. On one occasion Gable gave him an overcoat and a suit of clothes. On another occasion Gable purchased a mule and gave it to him. With the exception of the gasoline used in his car and purchased locally before starting on trips, expenditures made by Gable for the foregoing purposes were made out of pocket. No record of them was kept by him or the petitioner and prior to the payment in 1940, he was not reimbursed by petitioner for them. Usually before he started on trips, Gable would have the gasoline tank of his car filled at a local station at which he carried an account. When payment *359 was made, a record was kept of it and deduction was taken therefor in his income tax return for that year. Gasoline purchased by him while away on trips was paid for out of pocket. No record was kept of it and no deduction was taken by him with respect to it. Many times Gable went on business trips to look after his individual affairs, and no part of his traveling expenses which were paid out of pocket was ever recorded on his books or any deduction taken therefor in his income tax returns. During the period from 1925 to 1940, when Gable was connected with the petitioner, he was also interested in Black River Cypress Manufacturing Company, a corporation which operated a plant in South Carolina, and which was dissolved about 1930 or 1931. He was also interested in Williams-Gable Manufacturing Company, a corporation which operated a sash and door factory and a lumber yard at Charleston, and for a time a lumber yard at Sumter. In Louisiana, he owned a large tract of land which was classified as a farm but which was not actively operated. He also owned some lesser amounts of real estate in Mississippi. The out-of-pocket expenditures made by Gable in behalf of the petitioner during *360 1925 through 1940, and for which he was not compensated for by petitioner prior to 1940, amounted to $2,000. During the earlier years of petitioner's existence, and while the timber lands were being purchased, Entenman came down from Brooklyn from one to four or six times a year, on matters connected with the petitioner's business. Later he came once or twice a year, until the property was sold. The only prospective purchaser for the property of the petitioner that Entenman procured or brought to it was a man from Darlington, South Carolina. The out-of-pocket expenditures made by Entenman in behalf of petitioner during 1925 through 1940, and for which he was not compensated for until 1940, amounted to $2,000. The petitioner kept its books and filed its income tax returns on the cash receipts basis. Opinion The petitioner contends that the $7,000 paid by it in November 1940 equally to Gable and Entenman, as reimbursement to them of traveling and other expenditures made out of pocket by them in its behalf during 1925 through 1940, constituted an allowable deduction to it in 1940, and that the respondent erred in disallowing it. The respondent contends that his action was correct *361 and should be sustained. That both Gable and Entenman made many trips in connection with the petitioner's affairs is definitely established by the evidence, the trips of Gable being more numerous, while those of Entenman were longer in distance and greater in expense. The evidence shows that the expenses of such traveling were currently paid out of pocket by Gable and Entenman respectively, and that they were not reimbursed therefor by petitioner until 1940, because such funds as the petitioner had were required for other purposes. Although he kept some records reflecting his personal business enterprises, Gable kept no record of his out-of-pocket expenditures in behalf of petitioner, nor, so far as appears, did Entenman keep any record as to his expenditures of that character. While books were kept of the petitioner's affairs, no record was kept of the out-of-pocket expenditures of Gable and Entenman because neither of them advised petitioner's bookkeeper as to the amounts incurred. Under these circumstances, the $7,000 deducted by petitioner was based on estimates. Likewise, its contention here is grounded on opinions and estimates testified to by Gable and petitioner's bookkeeper. *362 From the evidence submitted, we are unable to find that Gable and Entenman expended the amount deducted by petitioner. However, we have found as a fact that each of them expended $2,000 out-of-pocket in its behalf during 1925 through 1940. The respondent contends that the petitioner's return was rendered on the accrual basis, and that therefore payments made in 1940 with respect to expenditures relating to prior years are not deductible in 1940. The testimony of petitioner's bookkeeper is to the effect that the petitioner's books were kept on the cash basis; that its income tax returns were filed on that basis; that the only items ever entered on the books as accruals were South Carolina income tax for 1940 and Federal income and excess profits taxes for that year; and that these items were entered on the books in 1940 after the sale of the timber lands, and in connection with the dissolution of the petitioner and the distribution of its cash to the stockholders. In its income tax return for 1940, the petitioner stated that the return was made on the cash basis and a deduction was taken for the amount of South Carolina income taxes for 1940 which had been entered on the books as *363 an accrual. The deficiency notice shows that the deficiency in controversy was determined after an examination by respondent of petitioner's books and records, that in determining the deficiency, respondent determined that the petitioner's income was reported on the cash basis, and that since the South Carolina income tax was not paid in 1940, the deduction taken therefore was not allowable. On this state of the record, we have found as a fact that the petitioner kept its books and filed its returns on the cash basis. The respondent's contention that petitioner's return was rendered on the accrual basis is denied. Of the $7,000 deduction claimed by petitioner and disallowed by the respondent, the petitioner is entitled to deduct $4,000. Decision will be entered under Rule 50.